# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN NEPOMUCENO, | Civil Case No. 11-4532 (FSH) |
| Plaintiff, | **OPINION & ORDER** |
| v. | July 9, 2013 |
| ASTELLAS US LLC, et al., | |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. The Court has reviewed the submissions of the parties and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78.

**I.    BACKGROUND**

   **A.    Factual History**[1]

Plaintiff Ryan Nepomuceno was hired by Defendant Astellas on April 2, 2007 and was terminated on August 3, 2010. (DS ¶ 2; PR ¶ 2.)[2] Plaintiff's termination was based on an email he sent to a coworker on April 8, 2010, which violated the Company's Electronic

---

[1] For purposes of the parties' cross-motions for summary judgment, the Court draws all reasonable inferences in the light most favorable to the respective non-moving party. *Rocheux Intern. of N.J., Inc. v. U.S. Merchants Financial Group, Inc*., 741 F. Supp. 2d 651, 655 (D.N.J. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[2] "DS" refers to Defendants' Rule 56.1 Statement; "PR" refers to Plaintiff's Responsive Statement; "PS" refers to Plaintiff's Rule 56.1 Statement; "DR" refers to Defendants' Responsive Statement.

Communications policy.[3] The email was not found as a result of a search of Plaintiff's email; the search was only of a different employee's email after that employee left the company. That employee was the recipient of the email, which read:

> Its official, Farley's an idiot. Read his comments.  This is why I can't stand this place. Read this horseshit
>
> 1 –"We do have new pricing for mycamine"  WTF, does he read his reports. Look at that bullshit email from the Gobbler. Unless you're sucking cock or your Sloan or Columbia $101 is the cheapest any Tom, Dick or Harry is getting
> 2 – "Where is Capital Health"? Read your fucking reports or look at a map, Somewhere between your asshole and your balls, that's where
> 3 – "Have I contacted the SL" – Hello, that asshole quit and you're asking me if you contacted him. Holy Shit, What the Fuck! You're rescheduling a ride day with John to have lunch in CT to meet a prego SL who won't be here in two weeks. WHAT THE FUCK!!!!!!!!!!!!!!!!!
> 4- MYALL TIME FAVORITE – At the bottom about lexiscan and Monmouth. It's not like Matt has been talking to fucking everyone including the mailman for 2 fucking months about Monmouth Cardiology. He asks "who's losing business"? We are your Fuck, if you don't do anything. Get your head out of ZAGAT and do your fucking job. What a Jackass.
>
> And I'm fucking under qualified to be an RSM. A dog fucking a monkey can run this shit show. Where do these assfuckers find more assfuckers. Really, is there a secret society of assfuckers who don't how to do anything but assfuck. This has to be the dumbest piece of shit email I have ever seen. Right in line with our old RSM.

---

[3] The policy states, in pertinent part:
> Computer systems, software, the Intranet, networks, voicemail and e-mail systems, and other technical resources that are provided by Astellas are to be used in the pursuit of the business of the Company. To provide for the use of electronic communications in a manner that is consistent with the business interests of Astellas and its customers, authorized representatives of the Company may monitor and review such electronic communications without advance notice. Employees should have no expectation of privacy with regards to their electronic communications.
> …
> The use of Astellas electronic systems in any manner that may be disruptive or offensive to others is strictly prohibited. This includes, but is not limited to, the display or transmission of: chain-mail correspondence; subject matter of a questionable nature (including, but not limited to, obscene or disparaging material, sexually explicit images, messages, and cartoons), and ethnic slurs or communications that may be construed as harassment or disparagement of others.

(DS ¶ 6.)

WHAT THE FUCK!!!!

(DS ¶ 28; Exhibit B to Feb. 1, 2013 Certification of Eric Lapham.) Defendants discovered the email in July 2010 while searching the email account of a co-worker who had left the company. (DS ¶¶ 22-25.) That co-worker was the recipient of the offending email quoted above. Less than one month after the discovery, Plaintiff, who had authored the screed, was terminated.

Plaintiff admits sending the email but claims that Defendants used it as pretext to terminate him in retaliation for alleged protected activities he engaged in over the course of his employment. His claimed protected activity is complaining a year and a half earlier about his former manager, Buffy Campbell, for allegedly making discriminatory remarks about a coworker (PS ¶ 4); signing an affidavit in support of a coworker's lawsuit against Defendants (PS ¶ 15); and filing a charge with the Equal Employment Opportunity Commission ("EEOC") in June 2010 against Astellas alleging retaliation (PS ¶ 20). Plaintiff contends that he also suffered other adverse actions in retaliation for his protected activities when Defendants, *inter alia*, removed Plaintiff's Certified Field Trainer ("CFT") title in late 2009 or early 2010 (PS ¶ 6); required Plaintiff and two others in April 2010 to attend a special training in order to increase the sales of Televancin, one of the Company's newer drug products (PS ¶¶ 12-14; DS ¶¶ 12-13); and served allegedly harassing subpoenas on Plaintiff's former and current employer in connection with this lawsuit (PS ¶ 38).

Plaintiff filed this action seeking recovery against Defendants for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New Jersey Conscientious Employee Protection Act ("CEPA"), and the New Jersey Law Against Discrimination ("NJLAD"). (Docket # 43.)

II.     **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 56, a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477

U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. DISCUSSION

#### A. Title VII Retaliation Claim

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.

In a Title VII retaliation case, a plaintiff can show retaliation through either direct or circumstantial evidence. *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). Under the direct evidence standard, "the plaintiff must present evidence 'which if believed, proves … without inference or presumption … that decisionmakers placed substantial negative reliance on an illegitimate criterion ... in deciding to terminate his or her employment.'" *Salkovitz v. Pioneer Electronics (USA) Inc.*, 188 F. App'x 90, 93 (3d Cir. 2006) (internal citations omitted). This is a "rigorous" standard, and if an employee satisfies it, the burden shifts to the employer to show that it would have made the "same decision even in the absence of the impermissible consideration." *Id.*; *see also Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998);

*Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002). Such direct evidence "'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338-39 (3d Cir. 2002) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir.1995)). One form of direct evidence is "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit." *Fakete*, 308 F.3d at 339 (internal quotation and citations omitted). Plaintiff, however, fails to satisfy this rigorous standard as a matter of law because he does not provide evidence that would lead a rational fact finder to believe without inference or presumption "that decisionmakers placed substantial negative reliance on an illegitimate criterion" when making the alleged adverse employment decisions.[4] *Salkovitz*, 188 F. App'x at 93.

When a plaintiff presents circumstantial evidence, as opposed to direct evidence, in support of his or her claim, "the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)" governs. *White v. Planned Security Services*, 480 F. App'x

---

[4] As an alternative argument in his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that the mixed motive doctrine applies to this case. Such a theory, which only applies to Title VII discrimination claims as outlined by statute, lessens a plaintiff's burden under the direct evidence test by allowing him to show that retaliation was a motivating factor in the employment decision as opposed to the 'but-for' cause. *See* Section 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.").

However, the U.S. Supreme Court has recently held that the mixed-motive doctrine does not apply to Title VII *retaliation* claims. The proper causation standard for such claims is causation in fact, i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury. *University of Texas Southwestern Medical Center v. Nassar*, 12-484, 2013 WL 3155234, at *14 (U.S. June 24, 2013). Therefore, because the mixed motive doctrine does not apply to Plaintiff's Title VII claim, and because no reasonable fact finder could find that Plaintiff offers sufficient direct evidence to show retaliation absent "any process of inference," the Court evaluates his Title VII claim under the *McDonnell Douglas* framework.

115, 118 (3d Cir. 2012). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case for unlawful retaliation by demonstrating that (1) he engaged in an activity protected by Title VII; (2) the defendants took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action he suffered. *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). If the plaintiff establishes a *prima facie* case of unlawful retaliation, the burden then shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006). Finally, if the defendant establishes a legitimate reason for the adverse employment action, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's explanation is false and that retaliation was the real reason for the adverse employment action.[5] *Id.*; *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (explaining that plaintiff must show that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process.") (internal quotations omitted).

    **1.**    **The *Prima Facie* Case**

    Protected Activity

In this case, there is no dispute that Nepomuceno engaged in protected activity in that he (1) signed the April 2010 affidavit in support of a coworker's civil rights lawsuit against his

---

[5] A plaintiff may show pretext by submitting evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). To show pretext, Plaintiff must identify evidence which allows the fact finder to infer that retaliation was "more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 1111.

employer Astellas and (2) filed the June 2010 EEOC charge against Defendants alleging retaliation. In addition, construing all of the facts and inferences in the light most favorable to Plaintiff, he also engaged in protected activity in February 2009 when complaining about Campbell's allegedly discriminatory statements about another worker.[6]

Adverse Actions

Having identified Nepomuceno's protected activities, it is necessary to analyze the alleged adverse employment actions and then to determine if there is a causal connection between them. For a Title VII retaliation claim, an "adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "'[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence;' rather, retaliation is actionable only where it produces material injury or harm sufficient to deter opposition to or reporting of discriminatory employment practices." *Alers v. City of Philadelphia*, CIV.A. 08-4745, 2013 WL 300747, *8 (E.D. Pa. Jan. 24, 2013) (quoting *Burlington*, 548 U.S. at 67–68). Each of the four adverse employment actions Plaintiff alleges must be analyzed under this standard.

Plaintiff's termination in August 2010 clearly is an adverse employment action. However, the training Plaintiff received in April 2010 and the subpoenas served by Defendants after the commencement of this case cannot be characterized as adverse. Plaintiff provides no evidence to suggest why extra training should constitute an *adverse* employment action. The

---

[6] While Plaintiff allegedly complained about Campbell again in August or September of 2009, this complaint related to Campbell's questioning during a job interview of Plaintiff's friend about Plaintiff's work relationships. (PS ¶ 5, Exhibit C to Feb. 1, 2013 Certification of Michael DiChiara.) There are no allegations that Campbell's questions had anything to do with discrimination made unlawful by Title VII. Complaining of such interview questions does not amount to protected activity under Title VII as a matter of law. *See Moore*, 461 F.3d at 341-42.

training was to better equip Plaintiff, who exhibited low Televancin sales, which Plaintiff does not dispute, to perform his job as sales representative. That Plaintiff's other team members may have also had low sales but were not included in his training does not suggest that he suffered "material injury or harm sufficient to deter opposition to or reporting of discriminatory employment practices" when required to attend the training. *Id.* Indeed, the goal with increased training would arguably be to increase sales, which would materially benefit Plaintiff's employment conditions as opposed to harm them. No reasonable fact finder could conclude that being sent for training under these circumstances was an adverse action taken against him.

      Similarly, the subpoenas Astellas served on Nepomuceno's current and former employers in connection with this case do not constitute adverse employment actions because they are not adverse. The Honorable Patty Shwartz earlier addressed this issue when she quashed in part and granted in part Defendants' subpoenas. Judge Shwartz balanced the interests of both parties: Plaintiff's desire to be free from overly invasive inquiries that might be harmful to his current employment prospects, and Defendants' desire to procure documents that may shed light on Plaintiff's characterizations of former relationships with employers and that may demonstrate inconsistencies in Plaintiff's testimony. While Judge Shwartz limited the scope of the subpoenas to include requests for relevant information likely to lead to the discovery of admissible evidence, she determined that there was no satisfactory, alternative means to discover the relevant information Defendants sought and that such requests were neither "oppressive [n]or improper." (Ex. C to McLane Cert., p. 18.) Based on the record evidence taken as a whole, no rational trier of fact could find that such service of subpoenas seeking relevant information amounts to an adverse action.

9

With respect to Plaintiff's loss of designation as a field trainer, this loss was purportedly due to a nationwide reduction in the number of certified field trainers. (DR ¶ 6.) Whether this constitutes an adverse action is a close legal question, but even if it is considered an adverse action, Plaintiff must still establish a causal connection between his loss of the title and his protected activities, which is analyzed below.

Causal Connection

When asserting a Title VII retaliation claim, it is not enough for a plaintiff to merely point to protected activities and an adverse employment action; the plaintiff must demonstrate a causal connection between the two. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It is that causal link that is missing in this case. With respect to a causal link, courts have "focused on the temporal proximity between the employee's protected activity and the adverse employment action," but "where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)). While a closer temporal relationship suggests greater probability of causation, a more distant temporal connection can be overcome by showing a pattern of employer antagonism in the interim. *Kachmar*, 109 F.3d at 177; *Williams v. Philadelphia Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (If "the temporal proximity is not so close as to be unduly suggestive" of retaliation, "timing plus other evidence may be an appropriate test.").

Plaintiff's loss of his CFT title in late 2009 or early 2010, even if it could be characterized as an adverse action, was too temporally removed from the alleged February 2009 complaint about Campbell's discriminatory conduct. Nor has he adduced facts tending to show a

pattern of antagonism in the intervening period that could lead a reasonable fact finder to infer retaliatory causation.

Plaintiff's termination was not particularly distant in time from the April 2010 affidavit and the June 2010 EEOC charge, with an intervening period of approximately four months and two months respectively. However, mere timing alone is insufficient to prove causation unless it is "unusually suggestive." *Morrissey v. Luzerne Cnty. Cmty. Coll.*, 117 F. App'x 809, 816 (3d Cir. 2004). "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Here, plaintiff has adduced no evidence that the timing is unusually suggestive,[7] and the timing lacks a factual basis from which any reasonable fact finder could infer causation, particularly in light of the fact that during the time between Plaintiff's protected activity and his termination, his employer discovered his offensive, crude and venomous email hurling foul invective about other employees, in violation of Astellas' Electronic Communications policy. Plaintiff cannot overcome this evidence, and his effort to squeeze his termination into a Title VII claim is strained to the breaking point. No reasonable juror could find that he was terminated for signing an affidavit in somebody else's lawsuit a year earlier or for filing an EEOC claim, rather than for his own choice to use company email to send that foul email to a fellow employee. He was fired shortly after discovery of that email.

---

[7] While Plaintiff claims that Martin Golden, who made the termination decision, was aware of Plaintiff's complaints about Campbell in 2009, such knowledge of complaints so temporally removed from the termination decision does not suggest a causal connection; moreover, Plaintiff does not offer evidence to dispute that Golden was unaware of his affidavit or EEOC charge when making the decision to terminate. (DS ¶ 32; PR ¶ 32.)

Significantly, despite his claim of retaliation, his employer never searched his email during the entire span of time that the activity was ongoing—the infamous email was discovered by chance when a different employee resigned and that person's work email was checked to assure continuity of customer service.

Plaintiff has failed to adduce evidence from which a reasonable fact finder could infer causation between his alleged protected activity and his termination. He thus fails to establish a *prima facie* case of Title VII retaliation.

As a separate and independent basis, this Court finds that even if plaintiff had established a *prima facie* case of retaliation, Defendants have provided a legitimate, non-retaliatory reason for both the revocation of the CFT title (a national, nondiscriminatory reduction in the number of CFTs), and for Plaintiff's termination (Plaintiff's vulgar and venomous email). *See Jackson v. Planco*, 431 F. App'x 161 (3d Cir. 2011) (discussing violation of company's Internet policy as legitimate grounds for termination). Plaintiff is unable to adduce evidence from which a reasonable jury could find that Defendants' explanation for the adverse action was false or that retaliation was the real reason for the adverse actions. *See Fuentes*, 32 F.3d at 764 (citations omitted).[8] A fact finder could not reasonably infer that Defendants' reason for taking action

---

[8] First, Nepomuceno tries to establish inconsistencies in Defendants' testimony regarding the purported reason why emails were checked in the first place. "While it is true that a plaintiff may rely on 'inconsistencies' and 'contradictions' to demonstrate pretext, pointing to a single inconsistency does not automatically overcome a legitimate, non-discriminatory [or nonretaliatory] reason for termination." *Clair v. Augusta Aerospace Corp.*, 592 F. Supp. 2d 812, 820 (E.D. Pa. 2009) (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 649 n. 15 (3d Cir. 1998). Furthermore, Defendants' stated reasons for searching Plaintiff's coworker's emails – for business continuity and to find contact information for clients -- are not contradictory.

Second, Plaintiff asserts a theory of selective enforcement to demonstrate pretext. However, this too fails because Nepomuceno never provides an adequate comparator, i.e. someone who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it."

against the Plaintiff, was "either a post hoc fabrication or … did not actually motivate the employment action." *Fuentes*, 32 F.3d. at 764.

Summary judgment on Plaintiff's Title VII claim is granted for Defendants.

### B. Remaining NJLAD and CEPA Claims

Plaintiff's remaining New Jersey Law Against Discrimination ("NJLAD") and Conscientious Employee Protection Act ("CEPA") claims are predicated on state law, and Plaintiff's complaint asserts that the basis for the Court's jurisdiction over those claims is 28 U.S.C. § 1367. (Am. Comp. ¶ 2.) Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Third Circuit has recognized the authority of district courts to decline to retain jurisdiction after the federal claims have been dismissed. *See, e.g., Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming decision of the district court to decline to exercise pendent jurisdiction after granting summary judgment to the defendants on the claims arising under federal law), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 737-38 (D.N.J. 2004). The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. Plaintiff may choose to refile those claims in state court.

### IV. CONCLUSION & ORDER

---

*Davis v. City of Phila. Water Dep't.*, 57 F. App'x 90, 92 (3d Cir. 2003) (internal quotation marks and citation omitted). Nepomuceno points to a manager sending an email in violation of Defendants' policy, but no reasonable fact finder could find that this conduct was the same or comparable to Plaintiff's email. It would, indeed, be difficult to find a comparable email so replete with vulgar and hateful descriptions of one's co-workers and one's employer. This email is truly one-of-a-kind in the annals of prose. Plaintiff also contends that the Defendants did not evenhandedly enforce their email policy because emails were never searched until his coworker's emails were searched and the offending email was found. The Court is not convinced that the selective enforcement theory can be applied here where the email in question was found as a result of searching Plaintiff's coworker's email account—**not** Plaintiff's own email account.

13

For the foregoing reasons,

**IT IS** on this 9th day of July, 2013,

**ORDERED** that Defendants' Motion for Summary Judgment (Docket # 61) is **GRANTED** as to the Title VII claim and Plaintiff's Motion for Summary Judgment (Docket # 60) is **DENIED** in part; and it is further

**ORDERED** that Plaintiff's Title VII claim (Count 1) is adjudged in favor of the Defendants; and it is further

**ORDERED** that Plaintiff's state law claims are claims are **DISMISSED** without prejudice to Plaintiff re-filing those claims in state court.

/s/ Faith S. Hochberg_____

Hon. Faith S. Hochberg, U.S.D.J.